

RECEIVED
NOV - 6 2008
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



NOV 6 2008
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ANGELA MAYFIELD,

    Plaintiff,

v.                                  CIVIL NO. 3:07CV506

MEMBERSTRUST CREDIT UNION

t/a TIDEWATER TELEPHONE EMPLOYEES

CREDIT UNION,

    Defendant.

### JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND OF ATTORNEYS FEES AND INCENTIVE AWARD AND MEMORANDUM IN SUPPORT THEREOF

COME NOW the parties, by counsel, and pursuant to Fed. R. Civ. P. 23(e), they move the Court for entry of a final order approving the class settlement (the "Settlement"), attached hereto as Exhibit A, and state as follows:

### FACTUAL AND LEGAL ISSUES OF THE CASE

This case arises out of the alleged failure of defendant, MEMBERSTRUST CREDIT UNION t/a TIDEWATER TELEPHONE EMPLOYEES CREDIT UNION ("MembersTrust"), to issue proper adverse action notices to consumers who were denied credit. Each class member received a notice of adverse action from MembersTrust which identified "Beacon,600- does not meet CU criteria" as the statement or reasons for the class member's credit decision. This action was brought as a Class Action Complaint in which the plaintiff, Angela Mayfield ("Mayfield"), alleged that she was a member of a class under the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., (ECOA). MembersTrust denied that these notices were unlawful, that

any violation of the ECOA was willful or that Mayfield and the class members were entitled to monetary damages from MembersTrust.

On or about May 26, 2006, the representative plaintiff, Mayfield, sought a loan and line of credit with Hall Auto. MembersTrust participated in the decision as to the loan and the terms of credit which would be made available to Mayfield. MembersTrust did not approve Mayfield's loan application. While MembersTrust sent adverse action notices to a number of consumers, including Mayfield, who were denied credit stating: "Beacon,600- does not meet CU criteria," Mayfield complained that such adverse action notice failed to lawfully inform her and other consumers of the basis or clear statement of reasons for MembersTrust's adverse action.

Mayfield's class Complaint contended that this adverse action notice violated 15 U.S.C. §1691(d) as it allegedly failed to state the reasons for MembersTrust's credit decision in the detail required by the ECOA. See 12 C.F.R. § 202.9(b)(2) ("The statement of reasons for adverse action required by this section must be specific and indicate the principal reason(s) for the adverse action").

15 U.S.C. § 1691(d) provides for statutory damages for violations of the adverse action notice requirements.[1] However, while statutory damages for these violations are available, such damages are not liquidated nor are they available upon a simple showing of the violation, i.e., no strict liability arises under the statute. Rather, in order to obtain any monetary relief under ECOA, a plaintiff must be prepared to show either actual damages or willfulness by the defendant. Compare 15 U.S.C. § 1640 (Truth In Lending Act providing strict liability and liquidated damages for violations); 15 U.S.C. § 1692 (Fair Debt Collection Practices Act providing strict liability and liquidated damages for violations). Further, while damages are

---

[1] 15 U.S.C. § 1691e(b).

available on a class-wide basis under the ECOA, those damages are capped at the lesser of $500,000 or 1% of MembersTrust's net worth. See 15 U.S.C. § 1691(e).

## FED. R. CIV. P. 23(e)

A class settlement, and subsequent dismissal of the case, requires Court approval. Fed. R. Civ. P. 23(e)(1)(A). The process for that approval is discussed generally in Rule 23(e) which provides, in relevant part:

**(e) Settlement, Voluntary Dismissal, or Compromise.**

(1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

Rule 23(e) thus imposes two basic requirements on the parties and on the Court before the approval of a class settlement and dismissal. First, the Court must determine that notice was directed "in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1)(B). Second, the Court must determine that that the settlement "is fair, reasonable, and adequate." The parties herein address each of these requirements.

## THE NOTICE WAS REASONABLE AND THE BEST PRACTICABLE

In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by

notice to class members." Fed.R.Civ.P. 23(e). Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort." Fed.R.Civ.P. 23(c). The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. Id. The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. See Manual for Complex Litigation (Fourth) § 21.312 (2004).

During discovery in this case and after significant effort, MembersTrust identified 507 class members who received the disputed adverse action notice. In connection with the settlement of this case, MembersTrust produced a List of Class Members with the last known and best address then available. On August 14, 2008, MembersTrust, through its counsel, mailed the Notice of Class Action to each of these 507 class members at the address listed on each members' credit application that was provided to MembersTrust. Exhibit "A", Declaration of Mark Shuford, at ¶ 4. Between August 15, 2006 and October 3, 2008, MembersTrust's counsel received 157 returns of the Notice of Class Action as undeliverable. Id. at ¶ 5. MembersTrust's counsel then went to substantial lengths to determine if better addresses existed for the Returns, including (1) consulting the United States Postal Service website to confirm that the addresses provided to MembersTrust actually existed; (2) consulting the telephone directories for each community listed on the Class Member's credit application to determine if a new address was available; (3) consulting the Polk City Directories – an electronic subscription service providing the most up-to-date online directory of every United States city; and (4) use of online reverse directories utilizing the phone number provided by the Class Member in their credit application.

Id. at ¶ 6.  However, because many of the Class Members used rental addresses on their credit applications, and no property records existed for these applicants, more current addresses were not found for 139 of the Class Members.  Of the 157 returned notices, Defendant's counsel was able to successfully trace 18 addressees.  Id. at ¶¶ 6-7.  Between August 21, 2008 and September 12, 2008, eighteen of the Returns were re-mailed, and none of those re-mailed have been returned.  Id. at ¶ 8.

Accordingly, as of November 6, 2008, the parties have reason to believe that 139 of 507 individuals have not received the original Notice of Class Action or a remailed notice.  However, the steps taken by MembersTrust in connection with such mailings have been as methodical, thorough and reasonable as possible under the circumstances.  Keeping in mind that many of these credit applications were submitted several years ago and indirectly conveyed through third party car dealers, the process of using the original addresses on such credit applications and follow up in re-mailing to any forwarding addresses provided probably was sufficient in and of itself.

As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'"  Fisher v. Va. Elec. & Power Co., 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted).  MembersTrust's efforts to provide class members with Notice of the Class Action provide clear evidence that they were the best notice practicable under the circumstances given:  (a) the available information; (b) the possible identification methods; (c) the number of class members; (d) the amount of the settlement; (e) the value to the class as a whole by holding up the settlement process for the other 368 class members; (f) the significant additional cost for

MembersTrust to attempt to locate the remaining class members; (g) the anticipated results of further identification efforts. Thus, the Court should find that the Notice of the Class Action (and process followed by MembersTrust as described above) satisfies Rule 23.

## THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court's determination of compliance with Rule 23(e)(1)(C) typically requires a two-part analysis. The Court must determine whether the settlement is "Fair" and then whether the settlement is "Adequate." The approval of a proposed settlement agreement is in the sound discretion of the Court. In re Jiffy Lube Sec. Lit., 927 F.2d 155, 158 (4th Cir.1991).

### A.    FAIRNESS.

The fairness factors pertain to whether there has been arm's length bargaining. See In re Mid-Atlantic Toyota Antitrust Litig., 564 F.Supp. 1379, 1383 (D. Md. 1983); South Carolina Nat'l Bank v. Stone, 139 F.R.D. 335, 339 (D.S.C. 1991). The court must consider: (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. In re Jiffy Lube Securities Litig., 927 F.2d 155, 158-59 (4th Cir. 1991); see also In re Microstrategy, Inc. Securities Litig., 148 F.Supp.2d 654, 663-64 (E.D. Va. 2001); Strang v. JHM Mortg. Securities Ltd. Partnership, 890 F.Supp. 499, 501 (E.D. Va. 1995). A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations. See South Carolina Nat'l Bank, 139 F.R.D. at 339.

Settlement was reached approximately after multiple informal settlement discussions and formal mediation with Magistrate Judge Lauck. As of the date of settlement, the parties had not filed dispositive motions, but had exchanged extensive Rule 26(a)(1) Initial Disclosures,

commenced and completed substantial written discovery concerning the underlying claim of Mayfield and relating to the class. When the settlement was reached, both parties had served and responded to written discovery, including interrogatories and requests for production of documents. They had also engaged in productive informal discovery, much of it under the direct supervision of Magistrate Judge H. Lauck. By joint motion of the parties, the Court preliminarily approved the Settlement and conditionally granted class certification.

The parties fairly reached the Settlement. The facts and legal issues in the case – whether the statement of reasons in MembersTrust's adverse action notice was adequate and whether such alleged violation of the ECOA was willful – were readily ascertainable by formal written discovery, as conducted in this case. In addition, through the use of informal discovery, class counsel was informed of additional information and details which supplemented otherwise comprehensive interrogatories and request for production of documents. Given the facts and posture of the case, Plaintiff's discovery was more than adequate to determine the strength of his case and thus constructively and fairly participate in settlement negotiations. See Strang v. JHM Mortg. Securities Ltd. Partnership, 890 F.Supp. at 501 ("Although the settlement comes at an early stage in the litigation, even prior to the initiation of formal discovery, the Court finds that Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations").

The settlement process itself is largely beyond question, as it was negotiated under the direct supervision of a federal magistrate judge. An arms-length negotiation process as in the present instance, before a federal magistrate judge more than satisfies the requirement that the settlement not be one brokered through "collusion or coercion." See, e.g., Wal-Mart Stores, Inc.

v. Visa U.S.A., Inc., 396 F.3d 96, 117 (2d Cir. 2005); Weiss v. Regal Collections, 2006 WL

2038493 (D.N.J. July 19, 2006).

Class counsel also satisfies the procedural fairness requirement of competent

representation. As stated more fully in his Declaration, Mr. Bennett has considerable experience

in this field and has litigated or is currently litigating over a dozen class actions under the Federal

Consumer Credit Protection Act (CCPA), including the ECOA. See Exhibit "B", Declaration of

Leonard A. Bennett, ¶¶ 8-10.

## B.   ADEQUACY.

The Court must also determine whether the proposed class settlement is substantively

"adequate." The Fourth Circuit's decision in:

> Jiffy Lube teaches that the adequacy inquiry is guided by
> evaluating: (1) the relative strength of the plaintiffs' case on the
> merits, (2) the existence of any difficulties of proof or strong
> defenses the plaintiffs are likely to encounter if the case goes to
> trial, (3) the anticipated duration and expense of additional
> litigation, (4) the solvency of the defendants and the likelihood of
> recovery on a litigated judgment, and (5) the degree of opposition
> to the settlement. Jiffy Lube, 927 F.2d at 159.

In re Microstrategy, Inc. Securities Litigation, 148 F.Supp.2d at 665.

By its terms, the Settlement provides both monetary and equitable consideration to all

class members. See Exhibit "A". Its essential terms are as follows:

> Memberstrust, at its sole cost and expense, will provide to each class
> member a letter advising class members of the reason for Memberstrust's
> decision not to offer credit ("Letter") complying with the requirements of
> the ECOA. Pursuant to the Notice, MembersTrust will provide each class
> member with the Letter setting forth the specific reasons why the
> application for credit was denied.

> MembersTrust also agrees to provide the Letter (which is, by approval of
> the Settlement Agreement, deemed to comply with the ECOA), to all

future customers of MembersTrust who are denied credit due to: (i) the fact that the applicant has excessive obligations in relation to their income or (ii) the loan applicant's credit history indicates he or she is a sub-prime customer. MembersTrust may in the future change this form of notice in a manner compliant with the ECOA.

MembersTrust also will deliver to each Class member with the Letter (See **Exhibit C** to Settlement Agreement), a check (as defined at Va. Code Section 8.3A-104) in the exact amount of $50.00 payable to that Class member at his or her last known address. These checks will include a statement to inform the bearer that they will be valid only for a period of three months from the date of the check (which will be within one calendar week of the date such check is mailed). After the passage of four months from said date, the funds to have been paid through any check not then presented to Memberstrust's bank will revert to cy pres award to the Consumer Alliance of Virginia, LLC.

In addition to the relief provided above, subject to Court approval, MembersTrust agrees to pay an award to the Class Representative in the amount of $500.00.

This settlement is fair, reasonable and an excellent result for the class. First, the estimated recovery in the event of a trial could not have likely produced as good a result. Recovery in this case would have required that Mayfield establish willful non-compliance with the ECOA, which is no small task. Even if Mayfield could successfully prove that MembersTrust's alleged violation of law was willful, the capped liability of MembersTrust would be the lesser of $500,000 or 1% of MembersTrust's net worth, to be divided amongst the class. In this case it has been established that MembersTrust's net worth is less than $4,000,000.

Because of the statutory cap on damages, settlement at a stage earlier than the eve of trial made even more sense to class counsel than in another case without such a cap. If the case continued to the eve of trial, it is certain that Class Counsel's attorney's fees, at a lodestar rate of

$450 per hour, would have greatly exceeded the fee sought in this case.   It is equally certain that MembersTrust's fees and costs would also have significantly exceeded that amount.   After appeals, it is also possible that any recovery may not be available for two years after verdict.

In comparison, Mayfield obtained a settlement which will guarantee a cash payment to the class of $50 per class member net of any attorney's fees or incentive award.   In addition, the settlement produces substantial non-monetary relief.  Class Counsel has secured the issuance of compliant notices under the ECOA.  While there is currently no market value for these notices, imputing even the most nominal of value to these rights ($5.00) these notices can be reasonably valued by the Court to have a significant value to the class members, as well as those individuals in the near future who would not have received such a notice.   Importantly, the Settlement also provides that any unclaimed funds do not revert to MembersTrust and are instead to be paid as cy pres to the Consumer Alliance of Virginia, LLC.

"Thus, the old adage, "a bird in hand is worth two in the bush" applies with particular force in this case. FN24.  See Cardiology Associates, P.C. v. National Intergroup, Inc., 1987 WL 7030, at *2 (S.D.N.Y. 1987) (concluding that because continued prosecution of the action would have been expensive and time-consuming, and would have involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand' "); Alvarado Partners, L.P. v. Mehta, 723 F.Supp. 540, 547 (D.Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush' " in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting Chas. Pfizer & Co., 314 F.Supp. at 740)."   In re Microstrategy, Inc. Securities Litigation, 148 F.Supp.2d at 667.

Finally, the Court must consider it an important statement that not a single class member has either objected or opted out of the settlement.   "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.' Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975)." Id. at 668. As Judge Ellis of this court has previously explained, "Because "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy," the lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy.   Sala v. National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989)." Id.

## ATTORNEYS FEES AND INCENTIVE AWARD

The Settlement would also provide for payment of attorneys fees in the total amount of $8,753.00 and an incentive award of $500.00 paid to the Plaintiff as class representative.   Both of these are fair and reasonable under the circumstances in this case.   Both are paid by the Defendant independent of the cash payments to class members and these concessions were not negotiated until after the class settlement agreement had been reached.   While class counsel has incurred attorney's fees in excess of this award, the amount is consistent with the percentage of class recovery formula that has benefitted class counsel in other cases in this Court and is a standard to which counsel would like to remain consistent.   The incentive award is modest given the ordinary higher cap of the ECOA - $10,000 and the honorable commitment Mayfield has made to the class' benefit.

## CONCLUSION

Accordingly, for the reasons stated herein, the parties move the Court for entry of the Order attached hereto as Exhibit A approving the class notice pursuant to Fed. R. Civ. P. 23(e)(1)(B) and 23(c)(2), and approving the Settlement pursuant to Fed. R. Civ. P. 23(e)(1)(C).

**ANGELA MAYFIELD,**

By: _Leonard Bennett / by MCS_
        Of Counsel

Leonard A. Bennett (VSB No. 37523)
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606

Counsel for Plaintiff, Angela Mayfield

MEMBERSTRSUT CREDIT UNION
t/a TIDEWATER TELEPHONE EMPLOYEES
CREDIT UNION

By: _Mark C. Shuford_
        Of Counsel

Mark C. Shuford (VSB # 31075)
Kaufman & Canoles, P.C.
1051 E. Cary Street
P. O. Box 27828
Richmond, Virginia 23261

Counsel for Defendant, MembersTrust Credit Union
t/a Tidewater Telephone Employees Credit Union

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ANGELA MAYFIELD,**

   **Plaintiff,**

**v.**                **CIVIL NO. 3:07CV506**

**MEMBERSTRUST CREDIT UNION**
**t/a TIDEWATER TELEPHONE EMPLOYEES**
**CREDIT UNION,**

   **Defendant.**


## DECLARATION OF MARK C. SHUFORD

  Mark C. Shuford, being duly sworn, deposes and says:

  1.  I serve as counsel for defendant, MembersTrust Credit Union t/a Tidewater Telephone Employees Credit Union ("MembersTrust"), in connection with the above captioned lawsuit.

  2.  I am familiar with the litigation contained in the above captioned lawsuit, including the terms and agreements contained within the Class Settlement Agreement preliminarily approved by the Court in its Stipulated Order dated May 5, 2008.

  3.  On May 15, 2008, my law firm Kaufman & Canoles, P.C. ("K&C"), on behalf of MembersTrust, prepared copies of a Class Notice of Preliminary Approval and Fairness Hearing (the "Class Notice") to be sent to a specified list of 507 class members as requested in the Class Settlement Agreement.

  4.  On August 14, 2006, K&C mailed the Class Notice to each of the 507 class members on the Class List.

  5.  Between August 15 and October 3, 2008, K&C received 157 returned Class Notices (the "Returns") as follows:

**EXHIBIT**

**A**

a.  10 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the person not being known at the address given ("Attempted/Not Known" or "ANK");

b.  4 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the forwarding time having expired ("Forwarding Time Expired" or "FTE");

c.  18 Returns of the Class Notice deemed as undeliverable by the Postal Service due to an insufficient address ("Insufficient Address" or "IA");

d.  6 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the Class Member having moved and left no forwarding address ("Moved Left No Forwarding Address" or "MLNFA");

e.  4 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the Class Member not being at the address listed ("Not at This Address" or "NATA");

f.  26 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the Class Notice not being deliverable as addressed ("Not Deliverable As Addressed" or "NDAA");

g.  6 Returns of the Class Notice deemed as undeliverable by the Postal Service due to there being no such house or apartment number ("No Such Number" or "NSN");

h.  5 Returns of the Class Notice deemed as undeliverable by the Postal Service due to there being no such street ("No Such Street" or "NSS"); and

2

    i.     78 Returns of the Class Notice deemed as undeliverable by the Postal Service due to the Postal Service being unable to forward the notice ("Unable to Forward" or "UTF")

6. K&C went to substantial lengths to determine if better addresses existed for the Returns, including (1) consulting the United States Postal Service website to confirm that the addresses provided to MembersTrust actually existed; (2) consulting the telephone directories for each community listed on the Class Member's credit application to determine if a new address was available; (3) consulting the Polk City Directories – an electronic subscription service providing the most up-to-date online directory of every United States city; and (4) use of online reverse directories utilizing the phone number provided by the Class Member in their credit application. However, because many of the Class Members used rental addresses on their credit applications, and no property records existed for these applicants, more current addresses were not found for 139 of the Class Members.

7. Of the 157 Returns K&C was able to successfully trace 18 addressees.

8. Between August 21, 2008 and September 12, 2008, eighteen of the Returns were re-mailed, and none of those re-mailed have been returned.

9. To the best of my knowledge, I have reason to believe that, to date, 139 class members have not received either the Class Notice.

10. My office is prepared to mail a check in the amount of $50.00 as well as a letter advising class members of the reason(s) for MembersTrust's decision not to offer credit complying with the requirements of the Equal Credit Opportunity Act in the form previously approved by the Court to 368 class members by November 30, 2008.

3

11. This Affidavit is based upon my personal knowledge.

_Mark C. Shuford_
Mark C. Shuford

COMMONWEALTH OF VIRGINIA
CITY/~~COUNTY~~ OF Richmond

Subscribed and sworn to before me this 6th day of November, 2008.

_Patricia B. Camden_
Notary Public

My Commission Expires: 4-30-2012

::ODMA\PCDOCS\DOCSRIC\5115509\1

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANGELA MAYFIELD,
       Plaintiff

v.                                    CIVIL NO. 3:07CV506

MEMBERSTRUST CREDIT UNION
t/a TIDEWATER TELEPHONE EMPLOYEES
CREDIT UNION,

       Defendant

## DECLARATION OF LEONARD A. BENNETT

I, Leonard A. Bennett, declare:

    1.     My name is Leonard A. Bennett. I am over 21 years of age, of sound mind,

capable of executing this declaration, and have personal knowledge of the facts stated herein, and

they are all true and correct.

    2.     I am one of the attorneys working on behalf of the Plaintiff in the above-styled

litigation, and I am an attorney and a principal of Consumer Litigation Associates, P.C., a four

attorney law firm with offices in Hampton Roads, and Fairfax, Virginia. My primary office is at

12515 Warwick Boulevard, Suite 100, Newport News, Virginia 23606.

    3.     Since 1994, I have been and presently am a member in good standing of the Bar

of the highest court of the State of Virginia, where I regularly practice law. Since 1995, I have

been and presently am a member in good standing of the Bar of the highest court of the State of

North Carolina. I have also been admitted to practice before and am presently a member in good

standing of the Bars of the following courts:

| Court: | Date Admitted: |
|---|---|
| United States Supreme Court | 2005 |
| United States Court of Appeals for the<br>    Fourth Circuit | 2002 |



EXHIBIT
B

| | |
|---|---|
| United States District Court for the<br>    Eastern District of Virginia | 1994 |
| United States District Court for the<br>    Eastern District of North Carolina | 2005 |
| United States District Court for the<br>    District of Wisconsin | 2006 |
| United States District Court for the<br>    Eastern District of Michigan | 2003 |
| United States District Court for the<br>    Northern District of Illinois | 2003 |

I have been admitted *pro hac vice* in jurisdictions across the country including California, Florida, Rhode Island, Connecticut, New Hampshire, Ohio, South Carolina, Pennsylvania, Arizona, Washington and Maryland.  I have never been denied admission *pro hac vice*.

5.      For over a decade, my practice has been limited to consumer protection litigation While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiff=s litigation under the Federal Fair Credit Reporting Act.  At least two-thirds of my practice is in this area.  Most of my professional accomplishments have come in this field.

6.      In 2003, I was invited to and did present the Congressional Testimony of the National Association of Consumer Advocates before the House Committee on Financial Services, AFair Credit Reporting Act: How it Functions for Consumers and the Economy@, June 4, 2003, Proposed Amendments to the Federal Fair Credit Reporting Act, http://financialservices.house.gov/media/pdf/060403lb.pdf.  I have also recently presented the Congressional Testimony of the National Association of Consumer Advocates before the House Committee on Financial Services, "The Fair Credit Reporting Act: Consumers' Ability to

Dispute and Correct Inaccurate Information", June 19, 2007,

http://www.house.gov/apps/list/hearing/financialsvcs_dem/osbennett061907.pdf.

7.     Since 2001, I have been asked to and did speak at numerous seminars and events in the area of Fair Credit Reporting and Identity Theft, or in the broader area of Consumer Protection litigation.  These included the following:

**2007**

- Washington State Bar, Consumer Law CLE, Invited Speaker, July 2007
  *Fair Credit Reporting Act.*

- House Financial Services Committee, June, 2007
  *Fair Credit Reporting Act.*

- National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference,*  Denver, Colorado, May 2007,
  *Multiple Panels;*

- U.S. Army JAG School, Charlottesville, Virginia, Course Instructor, May 2007
  *Fair Credit Reporting Act.*

- Georgia State Bar, Consumer Law CLE, Speaker, March 2007
  *Fair Credit Reporting Act.*

**2006**

- Contributing Author, *Fair Credit Reporting Act, Sixth Edition,* National Consumer Law Center, 2006.

- National Consumer Law Center, National Consumer Rights Conference, Miami, FL, Speaker for Multiple Sessions, *Fair Credit Reporting Act,* November 2006

- Texas State Bar, Consumer Law CLE, Speaker, October 2006
  *Federal Claims in Auto fraud Litigation*

- Santa Clara University Law School, Course  March 2006
  *Fair Credit Reporting Act.*

- Widener University Law School, Course,   March 2006
  *Fair Credit Reporting Act.*

- United States Navy, Navy Legal Services, Norfolk, Virginia, April 2006

3

*Auto Fraud*;

**2005**

- Missouri State Bar CLE, Oklahoma City, Oklahoma,
  *Fair Credit Reporting Act*;

- National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
  *Fair Credit Reporting Act Experts Panel*; and
  *ABC=s of the Fair Credit Reporting Act.*

- National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, New Orleans, Louisiana (May 2005),
  *Multiple Panels*;

- United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
  *Consumer Law.*

**2004**

- American Bar Association, Telephone Seminar;
  *AChanging Faces of Consumer Law@*,

- National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
  *Fair Credit Reporting Act Experts Panel*; and
  *ABC=s of the Fair Credit Reporting Act.*

- National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Chicago, Illinois;
  *Multiple Panels*

- Oklahoma State Bar CLE, Oklahoma City, Oklahoma,
  *Identity Theft*;

- Virginia State Bar, Telephone Seminar,
  *Identity Theft*;

- United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
  *Consumer Law*

- United States Navy, Navy Legal Services, Norfolk, Virginia,

*Auto Fraud*;

- Virginia State Bar, Richmond and Fairfax, Virginia,
  *Consumer Protection Law*;

- Michigan State Bar, Consumer Law Section, Ann Arbor, Michigan;
  *Keynote Speaker*.

8.   I have substantial experience in complex litigation, including class action cases, prosecuted under the Consumer Credit Protection Statutes, including the Fair Credit Reporting Act.

9.   I have litigated in excess of 350 federal cases under the Consumer Credit Protection statutes.   As of the date of this Declaration, I have lost only four federal cases to a dispositive motion.

10.   I have also prosecuted approximately a dozen consumer class cases and have been appointed class counsel in such cases in this District.

11.   In this case, we reached the proposed settlement only after formal mediation with Magistrate Judge Lauck.   Further, we did not negotiate attorney's fees or an incentive award until after agreement had been reached on the class consideration.

12.   To date, at an hourly rate of $450, I have incurred actual lodestar attorneys fees in the case in excess of $30,000.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Signed this 6th day of November, 2008.

/Leonard A. Bennett

LEONARD A. BENNETT
*CONSUMER LITIGATION ASSOCIATES, P.C.*

5

VSB #37523
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 facsimile

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division


ANGELA MAYFIELD,

        Plaintiff,

v.                                                                    Civil Action No. 3:07cv506

MEMBERSTRUST CREDIT UNION
t/a TIDEWATER TELEPHONE EMPLOYEES
CREDIT UNION,

        Defendant.

---

## CLASS SETTLEMENT AGREEMENT

**1.   RECITALS**

    a.    Angela Mayfield ("Plaintiff or "Class Representative") has alleged that Memberstrust Credit Union t/a Tidewater Telephone Employees Credit Union ("Memberstrust" or "Defendant") has not complied with certain of the notice requirements set out in the Equal Credit Opportunity Act ("ECOA");

    b.    Memberstrust denies each and every one of the allegations of improper conduct and has asserted a number of defenses to Plaintiff's claims;

    c.    Plaintiff and Memberstrust agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any state or federal statute or law, or of any liability or wrongdoing by Memberstrust, or of the truth of any of the claims or allegations alleged in the above-captioned litigation ("the Action") or otherwise;

    d.    Arms-length settlement negotiations MEDIATED BY United States Magistrate Judge M. Hannah Lauck have taken place between counsel for Plaintiff and Memberstrust, and this Settlement Agreement, including exhibits, contains all the terms and conditions of the settlement between Plaintiff and Memberstrust, both individually and on behalf of the class to be formed ("Class"), subject to final approval of this Court;

    e.    Plaintiff's counsel has concluded, after due investigation and carefully considering the relevant circumstances of Memberstrust, the Action and the law, that the



settlement set forth herein is fair, reasonable and adequate and in the best interests of the Class and further that it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure the benefits reflected herein obtained for the Class;

f.       Memberstrust has concluded, despite its belief that it is not liable for the claims asserted and has good defenses thereto, that it will enter into this Settlement Agreement solely to avoid the further expense, inconvenience and burden of this protracted and complex class litigation, to put to rest this controversy, to avoid the risks inherent in uncertain complex litigation and to avoid possible harm to customer relations;

For these reasons, it is agreed by and among the undersigned, on behalf of all parties, that the Action, and all claims for damages or any other remedies, and all claims for alleged violations of the Federal ECOA, any comparable state statute or any other claims alleged in the Complaint shall be settled, compromised and dismissed with prejudice as to Memberstrust, without costs (except as hereinafter provided), subject to the approval of this Court on the following terms and conditions:

## 2.      SETTLEMENT PURPOSES ONLY

a.       This Settlement Agreement is for settlement purposes only, and, notwithstanding anything else in this Settlement Agreement, neither the fact of, nor any provision contained in, this Settlement Agreement, nor any action taken hereunder shall constitute, be construed as, or be offered or received in evidence as an admission of any claim or any fact asserted by Plaintiff or Memberstrust or any related party.

b.       Any certification of a Settlement Class, pursuant to the terms of this Settlement Agreement, does not constitute and should not be construed as an admission on the part of Memberstrust that this action or any other proposed or certified class action, is appropriate for trial class treatment pursuant to Federal Rule of Civil Procedure 23 or any similar class action statute or rule.   This Settlement Agreement is without prejudice to the rights of Memberstrust: (a) to oppose any requests for class certification in this Action should the Settlement Agreement not be approved or implemented for any reason, or (b) to oppose any requests for class certification or certification in any other proposed or certified class action.

c.       If this Settlement Agreement is not approved or fails to be implemented for any reason, any certification, either preliminary or final, of the Settlement Class or any other alleged class shall be deemed null and void ab initio.

Promptly after approval of the form of this Settlement Agreement by the parties, Plaintiff and Memberstrust shall submit this Settlement Agreement, through their respective attorneys, to the Court for preliminary approval.

**3.**      **CLASS FORMATION/CLASS EXCLUSION/SETTLEMENT HEARING**

a.      Plaintiff and Memberstrust agree to the formation of one class for purposes of implementing this settlement subject to the terms and conditions of this Settlement Agreement.

b.      The class to be certified shall defined to include the following persons:

*The Class* - All persons who received a notice of adverse action from Memberstrust with the date of mailing from August 1, 2005 through August 22, 2007, whose notice identified "Beacon < 600 – Does not meet CU criteria" and/or "Does not meet CU guidelines" as among the reasons for the adverse action.

c.      No later than April 22, 2008, Plaintiff and Memberstrust will file in the form of the attached **Exhibit A**, pursuant to FRCP Rule 23, *a Stipulated Order (1) Certifying the Class for Purposes of Settlement; (2) Appointing Class Counsel; (3) Designating the Representative Plaintiff; (4) Preliminarily Approving the Settlement; (5) Approving Notice of the Settlement; and (6) Setting a Hearing Date for the Approval of the Final Settlement* (the "Stipulated Order" ). That Order will include an exemplar of the proposed notice to the class members (See "Notice of Class Action" for the Class attached as **Exhibit B**).

d.      Along with the Stipulated Order, Plaintiff will file his Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement, and Approval of Form and Manner of Notice and brief in support. Plaintiff and his counsel will be responsible for drafting that motion subject to approval by Memberstrust and its attorneys, which approval will not be unreasonably withheld.

e.      Upon entry of the Stipulated Order, the parties shall request that the Court set a final fairness hearing, following the preliminary approval of this Settlement, Agreement, which shall include an opportunity for the class members to be heard regarding the proposed settlement.

f.      Within ten business days after entry of the Stipulated Order, Memberstrust shall submit to the Court and Class Counsel a list of the names of the class members ("Class List"), attested to by affidavit of Memberstrust's keeper of records or other person with knowledge.

g.      Within fourteen business days after entry of the Stipulated Order, Memberstrust, at its sole cost and expense, including the costs of postage and printing, shall, send the Notice of Class Action by first-class mail to each member of the class. The Notice of Class Action shall contain the information required by FRCP Rule 23 and the Court.

h.    The Notice of Class Action shall provide the manner in which class members may exclude themselves from the class by mailing a notice of exclusion to Class Counsel, Leonard A. Bennett. See "Notice of Class Action for the Class" attached as **Exhibit B**. Class Counsel shall provide the Court and Memberstrust's counsel with copies of any exclusion letters received from class members within two weeks of the deadline for receipt of such letters.

i.    Leonard A. Bennett, or his partners, associates or staff shall answer any and all inquiries concerning the matters contained in this Settlement Agreement from the class members.

j.    Upon approval of the settlement, and after the appeals period has run, the parties will implement the settlement as approved by the Court as set forth below.

4.    **SETTLEMENT TERMS FOR CLASS MEMBERS AND CLASS REPRESENTATIVE**

The terms of the proposed settlement are as follows:

a.    *Class* - In consideration for the release provided below, Memberstrust will provide the class members with the following relief:

Memberstrust, at its sole cost and expense, will provide to each class member a letter advising class members of the reason for Memberstrust's decision not to offer credit ("Letter") complying with the requirements of the ECOA. A copy of the Letter is attached hereto as **Exhibit C**. Pursuant to the Notice, Memberstrust will provide each class member with the Letter setting forth the specific reasons why the application for credit was denied.

Memberstrust also agrees to provide the notice (which is, by approval of this Settlement Agreement, deemed to comply with the ECOA) in a form similar to the notice attached hereto as **Exhibit C** to all future customers of Memberstrust who are denied credit due to: (i) the fact that the applicant has excessive obligations in relation to their income or (ii) the loan applicant's credit history indicates he or she is a sub-prime customer. MembersTrust may in the future change this form of notice in a manner compliant with the ECOA.

Memberstrust also will deliver to each Class member with the Letter (See **Exhibit C**), a check (as defined at Va. Code Section 8.3A-104) in the exact amount of $50.00 payable to that Class member at his or her last known address. These checks will include a statement to inform the bearer that they will be valid only for a period of three months from the date of the check (which will be within one calendar week of the date such check is mailed). After the passage of four months from said date, the funds to have been paid through any check not then presented to Memberstrust's bank will revert to <u>cy pres</u> award to Consumer Alliance of Virginia, LLC.

b.     In addition to the relief provided above, subject to Court approval, Memberstrust agrees to pay an award to the Class Representative in the amount of $500.00.

## 5.     ATTORNEY'S FEES/CLASS MEMBERS OBLIGATIONS

a.     Memberstrust agrees to pay Leonard A. Bennett, Consumer Litigation Associates, P.C., attorney's fees and litigation expenses including, but not limited to, expert fees and costs, in an amount not to exceed thirty percent of the actual cash value of this settlement, subject to Court approval. This payment includes all attorney's fees and litigation expenses from inception of the claim to completion of the Settlement Proceedings and entry of the Order of Dismissal.

No additional attorney's fees or litigation expenses, or any other amounts are to be paid by Memberstrust to Plaintiff or to his counsel beyond the amounts stated herein.

b.     Any approved attorney's fees, litigation expenses, Class Representative award, or cy pres payment shall be paid to Class Counsel within twenty-one (21) days after settlement is finally approved and all appeals, if any, are resolved.

c.     Memberstrust a grees that it will not oppose or seek reduction of any of the attorney's fees or expenses or the Class Representative award requested by Class Counsel/Plaintiff's Counsel or the cy pres payment award.

d.     Class Representative, Class Member, and Class Counsel obligations are as follows:

i.     The Class endorses this Settlement Agreement as a fair, adequate and reasonable settlement and affirms that the Settlement Agreement brings about complete closure and an end to the litigation with respect to the subject covered in the claims certified and released herein.

ii.     The Class Representative and Class Counsel shall not take any action that would violate or be inconsistent with this Settlement Agreement.

## 6.     WAIVER AND RELEASE/COVENANT NOT TO SUE

a.     Final approval of the Settlement Agreement will mean that each individual class member who has not timely opted out of the settlement forever releases his or her claims against Memberstrust and its predecessors, successors, and affiliates, and each of their current or former employees, officers, shareholders, directors, principals, agents, distributors, licensees, independent contractors, attorneys, and assigns and their executors, heirs, immediate family members and insurers relating to and arising out of:   defects in the initial notice provided by Memberstrust under the ECOA which set forth as the basis for the credit

5

application denial the reason "Beacon < 600 – Does not meet CU criteria" and/or "Does not meet CU guidelines."

b.     Further, each member of the Class agrees not to start, continue, intervene in, participate in or receive any benefits from any lawsuit, arbitration, administrative, regulatory or other proceeding against Memberstrust in any jurisdiction based on or relating to claims, facts, or circumstances which are covered by this release.

c.     Notwithstanding the foregoing, nothing hereunder shall be construed to prevent either members of the Class or Memberstrust from enforcing the provisions of this Settlement Agreement.

## 7.     ADDITIONAL PROVISIONS

a.     **Entire Agreement**.  This Settlement Agreement, and all other Exhibits attached hereto and hereby incorporated by reference herein shall supersede any previous agreement or understanding between the parties with respect to the subject matter of this Settlement Agreement.  This Settlement Agreement may not be changed, modified or amended except in writing signed by the parties, subject to Court approval.

b.     **Governing Law**.  This Settlement Agreement shall be construed under and governed by the laws of the Commonwealth of Virginia.

c.     **Counterparts**.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

d.     **Binding Effect**.  This Settlement Agreement shall be binding upon and inure to the benefit of the parties, the classes, and their representatives, heirs, successors and assigns.

e.     **Class Representative**.  The Class Representative shall have only such rights as are provided by law and this Settlement Agreement.

f.     **Headings**.    The headings of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.  The numbering of provisions herein is intended to designate subsections where applicable.

g.     **Construction**.  No party to this Settlement Agreement shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

h.   **Waiver**.  The waiver by one party of any breach of this Settlement Agreement by other party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

i.   **Full Authority**.   All counsel and other persons or entities executing this Settlement Agreement or any related settlement documents warrant and represent that they have the full authority to do so and that they have the authority to take the appropriate action required or permitted to be taken under the Settlement Agreement in order to effectuate its terms.

j.   **Notices**.   Any notice, request, instruction, application for Court approval or application for Court order sought in connection with this Settlement Agreement or other document to be given by any party or to the other party shall be in writing and delivered personally or sent by regular, first class mail, postage prepaid, with copies by facsimile to the attention of Plaintiff's or Defendant's counsel or to other recipients as the Court may specify.   As of this Settlement Agreement, the respective representatives are as follows:

Plaintiff's Counsel:

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Blvd., Ste 100
Newport News, VA 23606
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

Defendant's Counsel:

Mark C. Shuford
KAUFMAN & CANOLES, P.C.
Three James Center, 12th Floor
1051 East Cary Street
Richmond, VA 23219
Telephone:  (804) 771-5700
Facsimile:  (804) 771-5777

k.   **No Beneficiaries**.  No portion of this Agreement shall provide any rights to, or be enforceable by any person or entity that is not a member of either Class, Memberstrust or a party specifically released under this Settlement Agreement except as specifically provided in this agreement.

l.   **Preservation of Privilege**.  Nothing contained in this Settlement Agreement or any Order of this Court and no act required to be performed pursuant to this Settlement Agreement or any Order of this Court, is intended to constitute, cause or effect any waiver (in whole or in part) of any attorney-client privilege, work-

product protection or common interest/joint defense privilege, and each member of each Class and Memberstrust agree not to make or cause to be made in any form any assertion to the contrary.

m. **Nonadmissibility.**   The settlement negotiations resulting in this Settlement Agreement have been undertaken by Plaintiff and Memberstrust and their respective counsel in good faith and for settlement purposes only pursuant to Federal Rule of Evidence 408, and no evidence of negotiations or discussions underlying this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, nor shall the Settlement Agreement be offered or received in evidence in any action or proceeding for any purpose, except this cause of action and then only for purposes of enforcing terms and conditions of this Settlement Agreement.

## 8.   CONDITIONS PRECEDENT TO FINAL SETTLEMENT

This Settlement Agreement will not be deemed final until all of the following has occurred:

a. The Court will have issued its Order for final approval of this Settlement Agreement following notice to the Class and Opportunity to be heard.

b. Plaintiff is not in violation of this Settlement Agreement.

c. The number of Class Members opting out of the settlement by the deadline for doing so shall be less than one (1%) percent of the total number of Class Members. If an amount of Class Members greater than one (1%) percent of the total Class elects to opt out of the settlement, Memberstrust has the right in its sole discretion to void the Settlement Agreement. If Memberstrust exercises that right by filing notice of avoidance of the Settlement Agreement with the Court, which notice shall be filed within seven (7) days of Plaintiff's Counsel providing Memberstrust with a complete list of Class Members opting out of the Settlement Agreement, this Settlement Agreement shall be void.

d. The appeals period has expired and any and all appeals are resolved.

e. Memberstrust has not exercised its right in its sole discretion to void the settlement if any court makes a material modification to the Settlement Agreement.

## 9.   FINAL SETTLEMENT ORDER/FINAL SETTLEMENT ACTIONS

Upon completion of all of the Conditions Precedent to Final Settlement stated above, the following actions shall take place:

8

a.  The Court shall issue a Final Settlement Order dismissing the Action with prejudice and without costs.

b.  The Court shall retain jurisdiction to enforce the terms of the Settlement Agreement.

IN WITNESS WHEREOF, Plaintiff and Defendant have executed this Settlement Agreement as of _April 23_, 2008.

PLAINTIFF: ANGELA MAYFIELD, by counsel,

Leonard A. Bennett

DEFENDANT: MEMBERSTRUST CREDIT UNION
t/a TIDEWATER TELEPHONE EMPLOYEES
CREDIT UNION

By: _Mark C. Shuford_
Its: _Counsel_

9